1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11          Respondent,                    No. CR S-00-0564 GEB KJM P

12      vs.

13   SANTOS AYON RIVAS,                    ORDER AND

14          Movant.                        FINDINGS AND RECOMMENDATIONS

15   _____/

16          Movant is a federal prisoner proceeding with a motion to vacate, set aside, or

17   correct his sentence under 28 U.S.C. § 2255.[1]  Movant filed his initial motion pro se, claiming

18   that the court failed to comply with Federal Rule of Criminal Procedure 32.  Respondent has

19   moved to dismiss the motion.

20          On November 19, 2004, movant filed a request to correct his sentence under

21   Federal Rule of Criminal Procedure 35 through counsel.  Because the seven day period for

22   correcting a sentence under the rule has long since lapsed, the court construes this request as one

23   to amend the § 2255 motion to add a challenge to the sentence under Blakely v. Washington, 542

24   U.S. 296, 124 S. Ct. 2531 (2004).

25   _____

26          [1] The pending motion has been assigned, for statistical purposes, the following case
     number:  No. CIV S-03-1497 GEB KJM P.

                                            1

I.  Background

On March 15, 2002, movant pled guilty to one count of conspiring to distribute methamphetamine within the meaning of 21 U.S.C. §§ 846, 841(a)(1).  A court interpreter assisted at the change of plea hearing.  As part of the written plea agreement, the government agreed to recommend that movant be sentenced at the bottom of the guideline range or the statutory mandatory minimum, whichever was greater, and that movant receive a three-point reduction in his offense level for acceptance of responsibility.  Motion To Dismiss (MTD), Ex. A ¶ IV B (plea agreement) & Ex. B at 6 (transcript of change of plea on 3/15/02).  The plea agreement also included the parties' stipulation that the offense level was 34 based on the quantity of drugs involved and that neither side would seek departures from the offense level. MTD, Ex. A ¶ VI B & Ex. B at 7.  Another part of the agreement was movant's waiver of appeal and collateral attack:

> The defendant understands that the law gives him a right to appeal his conviction and sentence.  He agrees as part of his plea, however, to give up this right to appeal his conviction and sentence.
>
> The defendant also gives up any right he may have to collaterally attack his conviction and his sentence.  He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction and sentence.

MTD, Ex. A ¶ VII B & Ex. B at 8.  When the court asked whether movant understood the meaning of collateral attack, trial counsel said he explained to movant that

> the plea agreement that we have cannot be attacked, and the sentencing that the Court will impose as a result of the plea agreement, that cannot be attacked by him getting an attorney or by him alleging that his attorney is incompetent, or that he wants to change it and get out of his agreement, or to deny the Court the right to sentence him, or say the Court improperly sentenced him as a result of this agreement.  I just told him he cannot attack it in any way, Judge, basically that it's firm.

MTD, Ex. B at 9.  Movant confirmed that the government's summary of the terms of the

/////

2

1  agreement was correct.  Id.  The court asked movant:

2              Do you understand that by having waived that right [to appeal and
             to attack collaterally], if I do something that is wrong during your
3             conviction hearing and during your sentencing hearing that means
             you would not be able to go to the 9th Circuit Court of Appeals,
4             where there are judges that have more authority than I have, and
             they could reverse me, that you would give up that right to
5             challenge anything I do?

6              Do you understand that what you are giving up is the right to
             challenge anything that I do?
7

8  MTD, Ex. B at 13.  Movant said he understood and confirmed that he gave up those rights.  Id.

9              Respondent then recited the factual basis for the plea, which described movant's

10  role in assuring co-defendant Beltran that "they could go to get the ten pounds of

11  methamphetamine," in accepting $3,000.00 from Beltran, in leaving his house with Beltran, and

12  returning with ten pounds of methamphetamine.  MTD, Ex. B at 17-18.

13              Movant provided a slightly different version of events to the probation officer:

14              The defendant was interviewed at the Sacramento County Jail
             outside the presence of his attorney, as his attorney previously
15             stated he did not need to be present.  The defendant stated he gave
             Carlos Beltran a ride, but did not know the other defendants.  He
16             stated he did not give Carlos the drugs, but that Carlos had got
             them from the store where they stopped.  The defendant stated he
17             did not see the man that gave Carlos the drugs because he went
             into the store.  He acknowledged he realized Carlos had the drugs,
18             but he was not to gain anything from the drug deal.  The defendant
             stated what he did was wrong by giving Carlos a ride and that he is
19             sorry for his involvement in this case.

20  Presentence Investigation Report (PSR) at 6, ¶ 17.

21              Movant was sentenced on June 28, 2002.  Before the judge imposed sentence, he

22  ascertained that the PSR had been read to movant in his own language and that movant had

23  discussed it with counsel through an interpreter.  Transcript of 6/28/02 Hearing (docket number

24  135) at 2.  Defense counsel told the court the report "is accurate" and made no objections to the

25  "material facts, sentencing classification, sentencing guideline ranges or policy statements

26  contained in or omitted from the presentence report."  Id.  The court found the offense

3

1    level to be 33, the criminal history category to be I, and the guideline range to be 135 to 168

2    months; the court imposed a sentence of 135 months. Id. at 2-3.

3    II.   The Motion To Correct The Sentence And The Motion To Dismiss

4             Movant argues that trial counsel had not thoroughly reviewed the PSR on his own

5    and with movant, for if he had, he would have realized movant's statement to the probation

6    officer contradicted the factual basis for his guilty plea, which in turn would have alerted counsel

7    to the fact that movant wished to withdraw his guilty plea. Movant's Mem. P. & A. in Supp.

8    § 2255 Motion (Mem. P. & A.) at 2-3. He characterizes this as a failure to comply with Federal

9    Rule of Criminal Procedure 32.[2]

10            In his declaration, movant also suggests his statement to the probation officer was

11    an objection to the calculation of drug quantity based on his limited participation in the offense

12    and that trial counsel instructed him not to object to the drug quantity calculation despite his

13    "expressed desire" to do so. Declaration of Santos Ayon Rivas (Rivas Decl.) ¶¶ 5-7. He also

14    claims defense counsel failed to discuss the "available defenses in reference to determining the

15    quantity of drugs attributable to my limited participation in the offense." Id. ¶ 3. Finally, he

16    suggests he was unsure about the extent of his waiver of appeal because he did not know

17    "whether or not the interpreter presented a truthful and accurate translation during the plea

18    bargaining, change of plea, and sentencing hearings." Id. ¶¶ 9-10.

19            Respondent argues the collateral attack is barred by movant's waiver of appeal. A

20    criminal defendant may waive the right to appeal or file a collateral attack on a conviction and

21    sentence, so long as the waiver itself is knowing and voluntary. United States v. Pruitt, 32 F.3d

22    431, 433 (9th Cir. 1994); United States v. Anglin, 215 F.3d 1064, 1066 (9th Cir. 2000); United

23    States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993). A claim of ineffective assistance of

24    counsel during the plea bargaining process almost certainly is cognizable despite a waiver,

25

26        [2] While petitioner refers to other subsections of Rule 32, the applicable subsection is (i)(1)(A).

1   <u>Washington v. Lampert</u>, 422 F.3d 864, 870-71 (9th Cir. 2005), while a claim of ineffective

2   assistance of counsel during other aspects of the proceedings may survive as well.  <u>Pruitt</u>, 32 F.3d

3   at 433; <u>United States v. Jeronimo</u>, 398 F.3d 1149, 1156 n.4 (9th Cir.), <u>cert.</u> <u>denied</u>, ___ U.S. ___,

4   126 S. Ct. 198 (2005); <u>but see</u> <u>Williams v. United States</u>, 396 F.3d 1340, 1342 (11th Cir. 2005)

5   (valid sentence appeal waiver precludes defendant from bringing § 2255 motion alleging

6   ineffective assistance of counsel at sentencing), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 126 S. Ct. 246

7   (2005).

8                A.  <u>Validity Of The Waiver</u>

9                Movant suggests that the waiver is not valid because of his uncertainty about the

10   accuracy of the translation and interpretation provided for him.

11                "[T]he representations of the defendant, his lawyer, and the prosecutor at [a

12   change of plea] hearing, as well as any findings made by the judge accepting the plea, constitute

13   a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court

14   carry a strong presumption of verity."  <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).

15   Movant assured the court that the plea agreement had been read to him in Spanish and that he

16   understood both the plea itself and the waiver of appeal and collateral attack, which defense

17   counsel again explained at length on the record.  MTD, Ex. B at 2-3, 9, 13.

18                Nevertheless, if the interpreter translated the waiver provisions inaccurately, the

19   waiver of appeal and collateral attack may indeed be invalid.  <u>See</u> <u>Chacon v. Wood</u>, 36 F.3d

20   1459, 1469 (9th Cir. 1994) (claim that interpreter misrepresented terms of plea may undercut its

21   validity).[3]

22                Movant's declaration is insufficient, however, to undercut his "solemn

23   declarations in open court."  He stops short of challenging the adequacy of the interpretation,

24   saying only that he was not sure it was correct.  He presents nothing suggesting he has now had

25   _____

26        [3]  <u>Chacon</u> has been superseded by statute on other grounds.  <u>See</u>, <u>e.g.</u>, <u>Nickerson v. Roe</u>,
     260 F. Supp. 2d 875, 891 (N.D. Cal. 2003).

1  the transcript of the plea proceedings and the plea agreement read to him in Spanish and

2  recognizes that it differs from the in-court translation. Movant's vague allegation is insufficient

3  support for his claim of error. Shah v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989).

4                    B. Ineffective Assistance Of Counsel

5             Movant also claims that counsel failed to inform him of the available defenses

6  based on his limited involvement and its impact on the foreseeability of the quantity of the

7  methamphetamine involved in the conspiracy. Mem. P. & A. at 11-12.

8             The federal law on claims of attorney ineffectiveness is clear:

9             First, the defendant must show that counsel's performance was
              deficient. This requires a showing that counsel made errors so
10            serious that counsel was not functioning as the 'counsel'
              guaranteed the defendant by the Sixth Amendment. Second, the
11            defendant must show that the deficient performance prejudiced the
              defense.
12

13  Strickland v. Washington, 466 U.S. 668, 687 (1984). "[T]he performance inquiry must be

14  whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. A

15  court must "indulge a strong presumption" that counsel's conduct falls within the range of

16  competence, but a failure to advise a defendant of any defenses to a charge may constitute

17  ineffective assistance of counsel. Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir. 1986); Mitchell v.

18  Scully, 746 F.2d 951, 957 (2d Cir. 1984). However, this court must determine whether in light

19  of all the circumstances, the identified acts or omissions were outside the wide range of

20  professional competent assistance and a petitioner must overcome the presumption that the act or

21  omission was an appropriate strategic decision. Strickland, 466 U.S. at 689, 690.

22             It also is petitioner's burden to establish prejudice: "A defendant must show that

23  there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

24  proceeding would have been different. A reasonable probability is a probability sufficient to

25  undermine confidence in the outcome." Id. at 694. This evaluation of prejudice must be based

26  on the totality of the evidence before the jury, recognizing the probability of a different outcome

1   is less likely in a case "with overwhelming record support."  Id. at 695, 696.

2          Here, movant is unable to bear his burden of showing deficient performance.

3   What he challenges is the calculation of his base offense level based on 4.5 kilograms of

4   methamphetamine and suggests that this amount was not foreseeable because of his "limited

5   involvement."  His statement to the probation officer, upon which he bases his argument, might

6   demonstrate "limited involvement."  It does not show the 4.5 kilogram amount was

7   unforeseeable.

8          The factual statement in support of the plea agreement described movant's role as

9   facilitating Beltran's receipt of ten pounds of methamphetamine and subsequent receipt of

10  $3,000.00 for his pains.  The 4.5 kilograms used to calculate the base offense level corresponds

11  roughly to this ten pounds of the drug.[4]

12         In his statement to the probation officer, movant denied receiving any money for

13  driving Beltran to the store and denied seeing "the man" give Beltran the drugs.  He does not,

14  however, claim he was unaware that he was facilitating a drug transaction or that he had no

15  knowledge of the quantities involved.  Indeed, his facilitation of the transfer of ten pounds of

16  methamphetamine and his presence during the exchange undermine any claim that the amount of

17  drugs was unforeseeable.[5]  Cf. United States v. Banuelos, 322 F.3d 700, 704, 707 (9th Cir. 2003).

18   There was no ineffective assistance of counsel in the plea bargaining process.

19         This conclusion resolves movant's related claim that somehow counsel should

20  have divined that movant's statement to the probation officer was an objection to the calculation

21  of drug quantity.  Even had counsel made the logical leaps movant suggests he should have, there

22  simply was no viable challenge to the drug quantity.  Counsel was not required to file a meritless

23

24         [4]  A kilogram is roughly 2.2 pounds.

25         [5]  Movant's suggestion that the only amount of drug he could have foreseen is that
    smaller amount found at his house, apparently after the transaction he facilitated,
26  miscomprehends the nature of the foreseeability standard and would replace it with the ability to
    impose a limitation with the benefit of hindsight.

1  motion to withdraw the plea or objection to the presentence report.  See Fed. R. Crim. P. 11(d)

2  (motion to withdraw plea must be based on fair and just reason).

3           C. Rule 32 (i)(1)(A)

4           A court's failure to determine whether a defendant has had an adequate

5  opportunity to review a presentence investigation report may be raised despite a waiver of appeal

6  or collateral attack.  United States v. Petty, 80 F.3d 1384, 1388-89 (9th Cir. 1996).  However, at

7  the sentencing hearing movant told the court that the presentence report had been read to him in

8  his own language and that he discussed it with counsel through an interpreter.  Transcript of

9  6/28/02 Hearing at 2.  Moreover, in his declaration, he notes that trial counsel "did not address

10  my objection to the drug quantity determination in any discussion about the facts stated in the

11  PSI report. . . ."  Rivas Decl. ¶ 6.  Accordingly, he does not contradict his in-court assurance that

12  the presentence report had been translated for him and he had discussed it with counsel; he says

13  only that the discussion did not cover the purported objection to the drug quantity figures.  This

14  does not raise a Rule 32 violation.  Compare United States v. Sustaita, 1 F.3d 950, 953 (9th Cir.

15  1993) (record did not establish defendant had read the presentence report).

16  III.  Motion To Amend To Raise *Blakely* Claim

17           In Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005), the Ninth Circuit held that

18  Blakely does not apply retroactively to cases fully resolved before its issuance.

19           Judgment against movant was issued July 11, 2002; his conviction was final on

20  July 21, 2002, when the time for filing his notice of appeal expired.  Fed. R. App. P. (b)(1)(A)(i).

21  Blakely was decided in 2004.  Accordingly, because Blakely has no application to this case,

22  permitting him to amend his petition would be without purpose.  Nunes v. Ashcroft, 375 F.3d

23  805 (9th Cir. 2004) (futility of amendment can support denial of a motion to amend), cert.

24  denied, ___ U.S. ___, 125 S. Ct. 1395 (2005).

25           Accordingly, IT IS HEREBY ORDERED that movant's November 19, 2004

26  request, deemed a motion to file an amended motion to vacate his sentence, is denied.

1    IT IS HEREBY RECOMMENDED that:

2        1.  Movant's July 14, 2003 motion to vacate, set aside, or correct his sentence

3    under 28 U.S.C. § 2255 be denied; and

4        2.  The Clerk of the Court be directed to close the companion civil case Civ. No.

5    S-03-1497 GEB KJM P.

6        These findings and recommendations are submitted to the United States District

7    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

8    days after being served with these findings and recommendations, any party may file written

9    objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11   shall be served and filed within ten days after service of the objections.  The parties are advised

12   that failure to file objections within the specified time waives the right to appeal the District

13   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14   DATED:  January 12, 2006.

17   UNITED STATES MAGISTRATE JUDGE

21   2/riva0564.257

9